## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

VIC REGALADO, Sheriff of Tulsa )
County, in his Official Capacity, and )
BOARD OF COUNTY COMMISSIONERS )
OF TULSA COUNTY, )
     )
        Plaintiffs, )
     )
v. )        **Case No. 18-CV-228-TCK-JFJ**
     )
CORRECTIONAL HEALTHCARE )
COMPANIES, INC., a Delaware )
Corporation, f/k/a CORRECTIONAL )
HEALTHCARE MANAGEMENT )
OF OKLAHOMA, INC., )
     )
        Defendant. )

## ORDER

Before the Court is the Defendant's Motion to Dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 46). Plaintiffs filed a Response (Doc. 49), and Defendant filed a Reply. (Doc. 50).

### I. BACKGROUND

Correctional Healthcare Companies, Inc. ("CHC")[1] was a party to a Health Services Agreement ("HSA"), wherein CHC was contracted to provide health care services to inmates and detainees under the custody and control of the Tulsa County Sheriff's Office ("TCSO"). (Doc. 2-1). The parties entered the HSA on August 30, 2010, and it was renewed annually. *Id.*

On May 31, 2013, a former TCSO inmate Bridget Revilla, along with the estates of three other deceased former TCSO inmates, filed an Amended Complaint in the United States District

---

[1] Formerly known as Correctional Healthcare Management of Oklahoma, Inc. (CHMO), which ceased to exist as a matter of law on December 31, 2011, when it merged into Correctional Healthcare Companies, Inc., in accordance with Colorado state law. *See* C.R.S.A. § 7-90-204.

Court for the Northern District of Oklahoma against Stanley Glanz, then-Sheriff of Tulsa County in his official and individual capacity, CHC, and three CHC providers individually. *See Revilla v. Glanz*, No. 13-CV-315-JED-JFJ (N.D. Okla. filed May 31, 2013) [2] ("*Revilla* litigation" or "*Revilla*").

On April 5, 2016, Vic Regalado succeeded Stanley Glanz as Sheriff of Tulsa County and was substituted as a party in place of Sheriff Glanz in regard to the official capacity claims in the underlying *Revilla* litigation.

On April 24, 2018, Sheriff Regalado and the Board of County Commissioners of Tulsa County filed a Complaint in this Court, alleging that they are entitled to be indemnified for any and all attorney fees they have incurred in the *Revilla* litigation, specifically the "legal expenses incurred by former Sheriff Glanz's chosen counsel, Brewster & De Angelis, P.L.L.C." (Doc. 2, ¶ 13).

On June 15, 2018, Defendant CHC filed a Motion to Stay the current case based on the underlying *Revilla* litigation. (Doc. 17). On June 23, 2020, this Court Ordered the parties to file a Second Joint Status Report. (Doc. 32). On September 8, 2020, pursuant to the Second Joint Status Report this case was stayed. Plaintiffs' claims were deemed premature because liability had not yet been determined in the underlying *Revilla* litigation. (See Doc. 35).

---

[2] The Tenth Circuit Court has held that it is proper to consider pleadings from the underlying action in a motion to dismiss filed pursuant to Fed. R. Civ. P. 12(b)(6). *See Pace v. Swerdlow*, 519 F.3d 1067 (10th Cir. 2008) (citing *Utah Gospel Mission v. Salt Lake City Corp.*, 425 F.3d 1249, 1253-54 (10th Cir. 2005) ("We have recognized . . . that a document central to the plaintiff's claim and referred to in the complaint may be considered in resolving a motion to dismiss, at least where the document's authenticity is not in dispute."). However, "[t]he documents may only be considered to show their contents, not to prove the truth of the matters asserted therein." *Tal v. Hogan*, 453 F.3d 1244, 1265 n.24 (10th Cir. 2006) *citing Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002).

On May 14, 2020, in the underlying *Revilla* litigation, Sheriffs Glanz and Regalado's Motion for Summary Judgment as to Christine Wright was denied, with the Court specifically opining that "a reasonable jury could find upon the summary judgment record that Sheriff Glanz is liable under a supervisory liability theory," and that "a reasonable jury could conclude Sheriff Glanz was deliberately indifferent to the risk that deficient medical care would result in a constitutional violation like the one decedent suffered." *See* Exhibit 3 – Doc. 528 Opinion and Order, p. 8.

On September 30, 2020, in the underlying *Revilla* litigation, Sheriffs Glanz and Regalado's Motion for Summary Judgment as to Alma McCaffrey was denied, with the Court specifically opining that "the evidence was sufficient to support the jury's finding of Glanz's supervisory liability." Moreover, the Court stated that "a reasonable jury could conclude Sheriff Glanz was deliberately indifferent to the risk that deficient medical care would result in a constitutional violation like the one [the decedent] suffered." *See* Exhibit 4 – Doc. 563 Opinion and Order, p. 14-15.

On October 6, 2020, in the underlying *Revilla* litigation, Sheriffs Glanz and Regalado's Motion for Summary Judgment as to Deborah Young was denied, with the Court specifically opining that "Sheriff Glanz received notice of significant failures of the medical care system at the jail, but did not make discernible changes to alleviate the substantial risks to inmates like Ms. Young, maintained a policy or custom of providing deficient medical care at the jail, and neglected to remedy deficient medical care." See Exhibit 5 – Doc. 574 Opinion and Order, p. 11.

On April 15, 2021, in the underlying *Revilla* litigation, an Agreed Judgment was entered in favor of Plaintiff Deborah Young against Defendant Vic Regalado, in his official capacity as

Sheriff of Tulsa County. *See* Exhibit 6 – Docket Summary in 13-CV-315-JED-JFJ, Doc. 596 – Judgment.

On April 15, 2021, in the underlying *Revilla* litigation, an Agreed Judgment was entered in favor of Plaintiff Alma McCaffrey against Defendant Vic Regalado, in his official capacity as Sheriff of Tulsa County. *See* Exhibit 7 – Docket Summary in 13-CV-315-JED-JFJ, Doc. 597 – Judgment.

On June 17, 2021, this Court lifted the stay (Doc. 40) and on August 12, 2021 CHC was granted permission to reurge their Motion to Dismiss filed on May 18, 2018 to reflect the current status of the case. (Doc. 45).

## II. MOTION TO DISMISS STANDARD

A Complaint must contain "a short and plain statement of the claim, showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A Complaint must contain enough "factual matters, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citations omitted). The trial court must insist the plaintiff put forward specific, non-conclusory factual allegations, to assist the court in determining whether the complaint is plausible. *Robbins v. Oklahoma*, 519 F.3d 1242, 1249 (10th Cir. 2008). The mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe [the] plaintiff has a reasonable likelihood of mustering factual support for [the] claims." *Id.* at 1247.

"The nature and specificity of the allegations required to state a plausible claim will vary based on the context." *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir.

4

2011). A plaintiff is not entitled to file a bare bones complaint and fill in the necessary facts after discovery is complete. *London v. Beaty*, 612 Fed. Appx. 910, 916 (10th Cir. 2015). The trial court must insist that the plaintiff put forward specific, non-conclusory factual allegations, to assist the court in determining whether the complaint is plausible. *Robbins*, 519 F.3d at 1249.

### III. ANALYSIS

#### A. Indemnification / Breach of Contract

Plaintiffs allege that under the terms of the HSA, they are entitled to indemnification from CHC "for the entire amount [Plaintiffs] paid in attorney fees and costs associated with [Plaintiffs'] defense in the *Revilla* litigation." (Doc. 2, ¶ 23). However, the Court finds Plaintiffs have failed to allege sufficient facts to show that CHC has breached the indemnification agreement between the parties.

Indemnity is a "contract by which one engages to save another from a legal consequence of the conduct of one of the parties." Okla. Stat. tit. 15, § 421. As with any other contract, the rule in the interpretation of an indemnity contract is to "ascertain the intention of the parties and to give effect to that intention if it can be done consistently with legal principles." *McAtee v. Wes-Lee Corp.*, 566 P.2d 442, 444 (Okla. 1977). "The intention of the parties should be derived from the whole contract, with particular clauses of a contract being subordinate to the general intent; and every part of a contract should be given effect." *Estate of King v. Wagoner Cnty. Bd. Of Cnty. Comm'rs,* 146 P.3d 833, 838 (Okla. Civ. App. 2006).

Here, the indemnity agreement between the parties states that the only litigation costs subject to indemnification are the costs incurred by Plaintiffs in defending against claims "arising out of any act, conduct, misconduct or omission of CHMO." (Doc. 2-1, ¶ 10.2) In their Complaint, Plaintiffs correctly assert that they are contractually entitled to indemnification from CHC for

5

defending against "any and all claims arising from CHC's conduct in the *Revilla* litigation." (Doc. 2, ¶ 20). However, the "Exclusion" provision in the indemnity agreement provides in pertinent part:

> EXCLUSION. CHMO, its agents, employees or independent contractors, shall not in any event be required to indemnify, defend, or hold harmless, the Tulsa County Criminal Justice Authority, Tulsa County, the Tulsa County Sheriff's Office or its elected officials, agents, servants and/or employees with respect to any claims, actions, lawsuits, damages, judgments or liabilities of any kind whatsoever caused by, based upon or arising out of any act, conduct, misconduct or omission of the Tulsa County Criminal Justice Authority, Tulsa County, the Tulsa County Sheriff's Office or its elected officials, agents, services and/or employees. (Doc. 2-1, ¶ 10.2).

Applying the basic rules of contract interpretation to the HSA and taking into consideration the entire agreement, including both the "Indemnity" provision and the "Exclusion" provision, it appears the intent of the parties was for indemnity to apply only to the costs of defending claims against Plaintiffs that arose out of CHC's acts or omissions, and not to any claims that arose out of the acts or omissions of the employees or agents of Tulsa County's Sheriff's Office, Tulsa County Criminal Justice Authority, or Tulsa County. (*See* Doc. 2-1, ¶ 10.2).

Moreover, an agreement indemnifying one from "its own [acts or omissions] will be strictly construed and must meet three conditions: "(1) the parties must express their intent to exculpate in unequivocally clear language; (2) the agreement must result from an arm's-length transaction between parties of equal bargaining power; and (3) the exculpation must not violate public policy." *Otis Elevator Co. v. Midland Red Oak Realty, Inc.,* 483 F.3d 1095, 1101 (10th Cir. 2007) (*quoting United States v. Hardage*, 985 F.2d 1427, 1434 (10th Cir.1993) see *Fretwell*, 764 P.2d at 152; *Kinkead v. W. Atlas Int'l, Inc.,* 894 P.2d 1123, 1127 (Okla.App.1993)). Plaintiffs have failed to allege facts sufficient to show that any of the above three conditions are satisfied.

6

As noted by CHC, many claims in the *Revilla* litigation are based on misconduct by parties other than CHC. *See* Exhibit 1 – Amended Complaint in *Revilla*, specifically alleging the following claims against Plaintiffs[3]:

1. Defendant Glanz is, and was at all times pertinent hereto, responsible for creating, adopting, approving, ratifying, and enforcing the rules, regulations, policies, practices, procedures, and/or customs of TCSO and Tulsa County Jail, including the policies, practices, procedures, and/or customs that violated Ms. Revilla, Mr. Brown, Ms. Salgado and Ms. Young's rights as set forth in this Amended Complaint. (Ex. 1, ¶ 10).

2. Sheriff and TCSO staff have falsified jail records to cover up jail deaths. (*Id*. at ¶¶ 47-49, ¶ 61).
3. TCSO had a custom of attempting to resuscitate clearly deceased patients to make it appear that they did not die in the jail. (*Id*. at ¶ 61).

4. The deliberate indifference [to inmates'] serious medical needs . . . was in furtherance of and consistent with policies, customs and/or practices which Sheriff Glanz promulgated, created, implemented or possessed responsibility for the continued operation of. (*Id*. at ¶ 77).

5. Sheriff Glanz was aware of systematic deficiencies in the medical care provided to inmates at the jail and failed to take reasonable steps to alleviate those deficiencies. (*Id*. at ¶ 78).

6. There is a policy at TCSO to send inmates with urgent needs to the hospital for purely financial purposes. (*Id.* at ¶ 97).

7. Sheriff Glanz maintained a custom of understaffing at the jail. (*Id*. at ¶ 98).
8. There are deep-seated and well-known policies, practices and/or customs of systemic, dangerous and unconstitutional failures to provide adequate medical and mental health care to inmates at the Tulsa County Jail . . . which evinces fundamental failures to train and supervise medical and detention personnel [and] created substantial, known and obvious risks to the health and safety of inmates like Plaintiffs. (*Id.* at ¶ 100).

9. Deliberate indifference to plaintiffs' serious medical conditions, in violation of the Eighth Amendment. There is an affirmative direct causal link between the jail policies promulgated by Sheriff Glanz and the said deliberate indifference. (*Id*. at ¶¶ 108-10).

---

[3] "The cited allegations (1) through (9) are only a few examples of the vast body of independent allegations asserted by the *Revilla* plaintiffs against Tulsa County Sheriff and the detention staff. See e.g., Exhibit 1 – Amended Complaint, which is a 55-page document outlining 243 different allegations." (Doc. 46 at 7).

Therefore, contrary to Plaintiffs' allegations that "all of the alleged misconduct regarding medical care [in the *Revilla* litigation] was attributable to CHC and CHC personnel," (Doc. 2, ¶ 12), the above claims are based on the alleged acts and omissions by Sheriff Glanz, Sheriff Regalado, and/or Tulsa County employees, without any involvement or mention of CHC.

Further, CHS references several Orders in the *Revilla* litigation which specifically recognize the individual actions/omissions of Sheriff Glanz and Sheriff Regalado. Although not included for the truth of the matter asserted, the Orders do reflect claims apart from CHC were litigated.

In the Court's Order denying Sheriff Glanz and Regalado's Motion for Summary Judgment as to Christine Wright, the Court stated that "a reasonable jury could find upon the summary judgment record that Sheriff Glanz is liable under a supervisory liability theory," and that "a reasonable jury could conclude Sheriff Glanz was deliberately indifferent to the risk that deficient medical care would result in a constitutional violation like the one decedent suffered." *See* Exhibit 3 – Doc. 528 Opinion and Order, p. 8. In denying Sheriff Glanz's Motion for Summary Judgment the Court summarized its determination as to Glanz's supervisory liability as follows:

> It was reasonable for the jury to find (1) Sheriff Glanz was responsible for "an unconstitutional policy or custom," *Dodds,* 614 F.3d at 1199, of poor training, inadequate staffing, and lack of urgency surrounding jail medical care; (2) that this policy or conduct resulted in a violation of [Plaintiff's] right to adequate medical care under the Fourteenth Amendment; and (3) Sheriff Glanz acted with deliberate indifference toward the risk that the policy or conduct of providing inadequate medical care would result in an injury like [Plaintiff's]. Accordingly, the evidence was sufficient to prove supervisory liability. *Id*. at 1001. (*citations omitted*).

The *Revilla* Court explained that for the reasons set forth above a reasonable jury could find that Sheriff Glanz is liable. *See* Exhibit 3 – Doc. 528 Opinion and Order, p. 10-11; Doc. 46 at 9.

8

Additionally, in the underlying *Revilla* litigation, the Court's Order and Opinion denying Sheriffs Glanz and Regalado's Motion for Summary Judgment as to Deborah Young lists many of the acts and/or omissions on behalf Sheriff Glanz that fall outside the scope of the indemnity provision of the HSA. Specifically, the Court states "the evidence, construed in plaintiff's favor, would support a finding that Sheriff Glanz received notice of significant failures of the medical care system at the Jail, but did not make discernible changes to alleviate the substantial risks to inmates like Ms. Young." *See* Exhibit 5 – Doc. 574 Opinion and Order, p. 11. Moreover, "the evidence showed Sheriff Glanz maintained a policy or custom of providing deficient medical care at the jail and that a reasonable jury could find these deficiencies resulted in the decedents death." *See Id*. at 12. Furthermore, the Court stated, "Sheriff Glanz neglected to remedy deficient medical care." *See Id.* at 12; Doc. 46 at 9-10.

In the underlying *Revilla* litigation, Sheriffs Glanz and Regalado's Motion for Summary Judgment as to Alma McCaffrey was also denied, with the Court specifically opining that "the evidence, construed in plaintiff's favor, would support a finding that Sheriff Glanz received notice of significant failures of the medical care system at the Jail, but did not make discernible changes to alleviate the substantial risks to inmates like Ms. McCaffrey" and that "the evidence was sufficient to support the jury's finding of Glanz's supervisory liability." Moreover, "the evidence sufficiently showed that Sheriff Glanz maintained a policy or custom of providing deficient medical care at the jail." Additionally, that a "reasonable jury could find these deficiencies [in Jail medical care] resulted in [the decedent's] death, such that the causation element was also satisfied." Finally, the Court opined that "a reasonable jury could conclude Sheriff Glanz was deliberately indifferent to the risk that deficient medical care would result in a constitutional violation like the

9

one [the decedent] suffered." *See* Exhibit 4 – Doc. 563 Opinion and Order, p. 14-15; Doc. 46 at 10.

Therefore, the above-referenced Orders denying Sheriffs Glanz and Regalado's Motions for Summary Judgment demonstrate that individual claims against Sheriff Glanz for his own alleged wrongdoing existed and remained in the suit. *See Id.* Claims that Sheriff Glanz promulgated unconstitutional policies and/or practices in the TCSO or Tulsa County Jail are beyond the scope of the indemnity provision of the HSA. Similarly, claims based on the alleged failures of Sheriff Glanz individually are also beyond the narrow scope of the indemnity provision. These claims fall within the scope of the exclusion provision of the HSA. Therefore, because these claims arose out of Plaintiffs' own alleged misconduct, and not the alleged misconduct of Defendant CHC, they are not subject to indemnification by CHC pursuant to the HSA. (*See Doc*. 2-1, ¶ 10.2).

As to Sheriff Regalado in his official capacity, the Court in *Revilla* specifically recognized the evidentiary record prevented summary judgment as to claims in his official capacity. *See* Court's Order denying Sheriff Glanz and Regalado's Motion for Summary Judgment; Exhibit 3 – Doc. 528 Opinion and Order, p. 8. In that Order, the Court in *Revilla* stated:

> Plaintiff's official capacity claim against Sheriff Regalado is an action against the entity of which he is an agent. This is why the official capacity claim here is effectively a claim against Tulsa County and also why, when Sheriff Glanz left office in 2015, the official capacity claim transferred to his successor, Sheriff Regalado." *Burke,* 935 F.3d at 998. A reasonable jury could find upon the evidence that (1) Sheriff Glanz "maintained a policy or custom of insufficient medical resources and training, chronic delays in care, and indifference toward medical needs at the jail, and that he did so knowing of an urgent need for reform," (2) the policy or custom resulted in the underlying violation of Ms. Salgado's constitutional rights, and (3) Glanz's maintenance of the policy was deliberately indifferent to serious medical needs of inmates. *Id.*

10

The same evidence that would support those findings as to the supervisory liability claim against Glanz prevents summary judgment as to the official capacity claim against Sheriff Regalado. *See Id*. at 999-1001. Sheriff Glanz – then the Tulsa County official charged with managing the jail – furthered a 'policy or custom' . . . of deficient medical care at the jail characterized by inadequate training, understaffing, and chronic delays" and "[a] reasonable jury could find his continuous neglect of these problems 'was the moving force behind the injury alleged.'" *Id.* (citations omitted). "And as explained above, Sheriff Glanz acted with deliberate indifference toward the risk that the policy or custom of providing inadequate medical care would result in an injury" like Ms. Salgado's. *See Id*. at 1001.

Therefore, the record reveals claims against Sheriff Regalado, in his official capacity, for his own alleged wrongdoing existed. Additionally, two (2) separate judgments were entered against Sheriff Regalado, in his official capacity, in the underlying *Revilla* litigation, with Plaintiff agreeing to "release any and all claims against Vic Regalado, Sheriff of Tulsa County, in his official capacity." *See* Exhibit 7 – Doc. 597, Agreed Judgment Against Vic Regalado, In his Official Capacity as Sherriff of Tulsa County. *See also* Exhibit 6 – Doc. 596, Agreed Judgment Against Vic Regalado, in his official capacity as Sherriff of Tulsa County; Doc. 46 at 11. As set out in the "Exclusion" provision in the indemnity agreement, judgments are not covered. (Doc. 2-1 ¶ 10.2).

Additionally, courts generally avoid such interpretation of contracts that would render a clause meaningless. See e.g., *Spring Creek Exploration & Prod. Co., LLC v. Hess Bakken Investment, II, LLC*, 887 F.3d 1003, 1018 (10th Cir. 2018). Here, if this Court were to adopt the Plaintiffs' position that "CHC has a duty to defend Plaintiffs for the entire suit" (Doc. 49, p. 1), regardless of the basis of the claims in the suit, such interpretation of the indemnity agreement between the parties would render the "Exclusion" provision meaningless, which was not the intention of the parties and is contrary to the basic rules of contract interpretation. *Greenberg v. Serv. Bus. Forms Indus.*, 882 F.2d 1538, 1540 (10th Cir. 1989) ("Intent must be determined by

11

construing the contract as a whole, and the court must construe the contract so as to give effect to each provision"). Accordingly, pursuant to the plain language of the HSA, Defendant CHC is not obligated to indemnify Plaintiffs for claims arising out of Plaintiffs' own misconduct.[4]

**B. Oklahoma state law.**

In their Complaint, Plaintiffs assert an alternative claim for indemnity against CHC, alleging that "CHC has a non-contractual implied duty, grounded in common law, to indemnify Plaintiffs for the entire amount they paid in attorney fees and costs associated with their defense in the *Revilla* litigation." (Doc. 2, ¶ 25).

Although there is an existing indemnity contract between the parties, the right to indemnity is not limited to a contractual agreement, and "[a] right to implied indemnity may arise out of a contractual or a special relationship between parties and from equitable considerations." *In re Cooper Mfg. Corp.*, 131 F. Supp. 2d 1238, 1247-48 (N.D. Okla. 2001) (*citing Daugherty v. Farmers Coop. Ass'n*, 790 P.2d 1118, 1120 (Okla. Civ. App. 1989)). Under Oklahoma law, " an indemnitee ordinarily may recover its attorney's fees incurred in defending against the indemnified liability only insofar as those fees were incurred in good faith and in the exercise of reasonable discretion." *U.S. v. Hardage*, 985 F.2d 1427, 1437 (10th Cir. 1993). "In the case of implied or noncontractual indemnity, the right rests upon fault of another which has been imputed or constructively fastened upon he who seeks indemnity." *Daugherty,* 790 P.2d at 1120. (emphasis added).

---

4 With respect to any claims in the *Revilla* litigation that are based on the alleged wrongdoing of CHC or its providers, CHC remains a party to the *Revilla* litigation and that litigation is still ongoing. *See* Exhibit 2 – Docket Summary in *Revilla*. "CHC has from the outset of the *Revilla* litigation defended against the claims asserted against it and its employees for their own alleged misconduct." (Doc. 46 at 13).

Oklahoma recognizes "a right of indemnity when one – who was only constructively liable to the injured party and was in no manner responsible for the harm – is compelled to pay damages because of the tortious act by another." *In re Cooper Manufacturing Corp.,* 131 F. Supp. 2d at 1248. Thus, to seek indemnification under Oklahoma state law, a party cannot be actively at fault. *Travelers Ins. v. L.V. French Truck Serv.*, 770 P.2d 551, 555, n. 16 (Okla. 1988).

Again, Plaintiffs make no distinction between the claims asserted against them based on their own wrongdoing and claims where they carry only constructive liability. Further, Plaintiffs would be entitled to indemnity by CHC only for the claims against them that are not based upon Plaintiffs' own fault. *See In re Cooper Mfg. Corp.*, 131 F. Supp. 2d at 1248. However, as discussed *supra*, there are numerous claims alleged by the plaintiffs in *Revilla* which are based on the alleged misconduct of Sheriff Glanz, Sheriff Regalado, and other Tulsa County employees. Therefore, Plaintiffs claims for indemnity under Oklahoma common law are likewise dismissed, as Plaintiffs have failed to assert sufficient facts they are entitled to relief under this theory.

**IV**. **CONCLUSION**

Plaintiffs have failed to allege sufficient facts for a plausible claim for relief under an indemnity theory and failed to plead sufficient facts to establish a breach of an indemnity contract by CHC. Accordingly, Defendant's Motion to Dismiss (Doc. 46) is granted and Plaintiffs' claim for indemnity is dismissed pursuant to the Federal Rule of Civil Procedure 12(b)(6).

**IT IS SO ORDERED**, this 27th day of October, 2021.

TERENCE C. KERN
United States District Judge

13